

# River Science, LLC
*Hydrologic & Hydraulic Engineering*

P.O. Box 32  
Kosciusko, MS 39090

601-613-5262  
www.riverscience-llc.com

April 25, 2016

Lewie G. "Skip" Negrotto IV  
Negrotto & Associates, PLLC  
133 Davis Avenue, Suite L  
Pass Christian, MS   39571

Dear Skip;

REFERENCE:     PALMER, ET AL VS SUNCOAST, ET AL  
                CASE NO. 1.15-CV-0034-HSO-JCG

On January 26, 2016 I made a site visit to Ravenwood Subdivision located in Pearl River County in the vicinity of Picayune, Mississippi. The purpose of the visit was to make observations and gather data for use in evaluating the hydrology and hydraulics of the area with respect to industrial development recently constructed in the floodplain of Alligator Branch. On April 21, 2016 I made a site visit to the sand drying facility itself. The following is a revision of my report of February 15, 2016 to include information from the April site visit.

In making this evaluation, along with the information gathered and observations made during the site visit, I relied upon my education and experience of 27 years in the field of Hydrology and Hydraulics. I also considered the following documents and data related to this matter:

- The Complaint filed December 28, 2015
- Pre-permit Construction Approval Application of Terracon, Inc.
- Geotechnical Report of Professional Service Industries, Inc.
- Construction drawings prepared by Linfield, Huner & Junious, Inc.
- Field notes prepared by Linfield, Hunter & Junious, Inc.
- Drainage Report prepared by Linfield, Hunter & Junious, Inc.
- No Rise and drainage calculations prepared by Aqua Engineering Services, Ltd.
- HEC-RAS computer models prepared by Aqua Engineering Services, Ltd.
- Flood Damage Prevention Ordinance of Pearl River County
- Hazard Mitigation and Flood Protection Plan of Pearl River County
- Flood Damage Prevention Ordinance of the City of Picayune
- Current effective FEMA Flood Insurance Study Report for Pearl River County
- Current effective FEMA Flood Insurance Rate Maps for Pearl River County
- Current effective FEMA Flood Insurance Rate Maps for the City of Picayune
- USGS Topographic Mapping for Pearl River County

- Google Earth aerial images (1998-2013)
- NAIP aerial images (2014)

**Background**

Alligator Branch is a Federal Emergency Management Agency (FEMA) studied stream located in Pearl River County, Mississippi. For the Flood Insurance Study (FIS) for Pearl River County, FEMA performed a detailed analysis with Base Flood Elevations (BFEs) from a point approximately 500-ft downstream of Highway 607 upstream to a point approximately 1200-ft upstream of Ravenwood Drive. Upstream of this point, the floodplain is designated Zone A BFEs. A Regulatory Floodway has not been established by FEMA for Alligator Branch.

Ravenwood Subdivision is located in Pearl River County, south of the city limits of the City of Picayune, Mississippi. The subdivision is located on the west side of Alligator Branch, upstream of Ravenwood Drive. On the east side of Alligator Branch is approximately 25 acres of land, upon which an industrial development has been constructed. As a part of this development, a multi-track railroad spur has been constructed which serves the industrial facility. The approximate extent of the spur is from Section Line Road north to the industrial facility. The majority of the railroad spur and the industrial facility lies within the Special Flood Hazard Area associated with Alligator Branch (Zone AE and Zone A).

According to the Complaint, construction of this industrial development and multi-track railroad spur has increased the amount of storm water runoff coming to Alligator Branch upstream of Ravenwood Drive and has placed obstructions in the floodplain of Alligator Branch. This, in turn, has increased flood heights and flood frequency of flooding in Ravenwood Subdivision.

**Flood Damage Prevention Ordinance**

Federal flood insurance is available only in those communities that participate in the National Flood Insurance Program (NFIP). The fundamental objectives of the NFIP are (1) to ensure that new buildings will be free from flood damage, (2) to prevent new developments from increasing flood damages on existing properties and (3) to ensure that natural and beneficial functions of floodplains are maintained or restored when opportunities arise.

Participation in the NFIP is determined by whether the community adopts and enforces a floodplain management ordinance in exchange for the protection of federal flood insurance availability to its citizens. Failure to adopt a flood damage prevention ordinance, or failure to enforce it, can result in suspension from the NFIP. Under suspension, the community becomes a non-participating community, and no new flood insurance policies can be issued nor can they be renewed. Policies in force at the time of the suspension remain in force until the coverage period expires. In other words, the availability of flood insurance from the NFIP would vanish should the community be suspended for non-enforcement of their ordinance.

*Palmer v Suncoast*

Both the City of Picayune and Pearl River County are participating NFIP communities, each with its own Flood Damage Prevention Ordinance.

Among other NFIP requirements, it is the responsibility of the local community to:

- Require development permits for all proposed construction and other developments within the community's designated 100-year floodplain;
- Review development proposals to determine whether the project is safe from flooding and provides for adequate drainage;
- Require non-residential structures to have the first floor elevated or flood-proofed one foot above the BFE;
- Obtain the BFE at the proposed site;
- Require determination of BFEs in un-numbered A zones when the proposed site is greater than 5 acres in size;
- Ensure that any fill placed in the floodplain does not cause drainage or water flow onto neighboring properties.

**Development in the Floodplain**

Flooding is a natural and unavoidable occurrence on all streams, creeks and rivers. The floodplain serves not only to convey excess water downstream, but also provides flood storage during flood events. Obstructions in the floodplain cause increases in flood heights in two ways; by taking up space which would have served as storage for flood waters, and by causing moving water to 'pile up' behind the obstruction.

The definition of 'obstruction' with regard to FEMA regulations includes but is not limited to: any dam, wall, wharf, embankment, levee, dike, pile, abutment, protection, excavation, channelization, bridge, conduit, culvert, building, wire, fence, rock, gravel, refuse, fill, structure, vegetation or other material in, along, across or projecting into any watercourse which may alter, impede, retard or change the direction and/or velocity of the flow of water, or due to its location, its propensity to snare or collect debris carried by the flow of water, or its likelihood of being carried downstream." Many of these elements are present within the industrial development, including the multi-track rail spur.

**Alligator Branch Hydraulics**

Aqua Engineering, Ltd. performed a hydraulic analysis of Alligator Branch with the Army Corps of Engineers' computer model HEC-RAS. This was done by obtaining the FEMA computer model of the stream and revising it to reflect existing conditions (pre-development) and proposed conditions (post-development). The geometry of the Proposed Conditions model should have reflected the existence of the multi-tract spur from FEMA Section O upstream to the limit of detailed study. However, a review of the modeling revealed that the spur was only included at one cross section (RS 18130).

*Palmer v Suncoast*

Another deficiency of the stream modeling concerns the un-numbered Zone A of Alligator Branch which extends upstream from the limit of study.  The impacts of the multi-track railroad spur, industrial buildings, appurtenances and stockpiles of material on flood heights should have been investigated by extending the computer model of Alligator Branch upstream. This could have been accomplished by surveying additional cross-sections with at least two cross-sections located at the plant site (per FEMA requirements).   The modeling performed by Aqua does not extend upstream past the current effective Limit of Study shown on the Flood Insurance Rate Map (FIRM) for Pearl River County/City of Picayune.

The HEC-RAS computer model provided by Aqua was revised to reflect the as-built extent of the multi-track railroad spur between FEMA Cross Section O and the current effective Limit of Study.  This 'As-Built' Conditions model shows an increase in the BFEs for Alligator Branch due to the construction of the spur.  The analysis was not extended upstream into the un-numbered Zone A, but it is likely that the spur, buildings, stockpiled materials, etc. will cause these increases to propagate upstream.

**Increased Storm Water Peak Flows and Volumes**

Development most always increases the peak flow and peak volume of stormwater runoff.  The purpose of a stormwater detention basin is to attenuate the increased flow and volume so that the outflow from the basin is equal or less than that of the pre-development conditions.  Commonly accepted practice is to use a 24-hour storm for the flow and volume calculations.  The stormwater detention calculations performed by LHJ used the Rational Method with a 25-minute storm duration.

It is questionable to use the Rational Method for volume calculations, since the Rational Method was designed to calculate peak flow rates rather than runoff volumes. Other methods, such as the National Resources Conservation Service (NRCS) Method are designed to calculate runoff volume. However, if the community allows the Rational Method for calculation of the storage volume it should be applied correctly.

The LHJ designer calculated the peak flow for one given Tc, and calculated the hydrograph volume for only that instance. The rainfall intensity, I,  in the Rational Method is related to the storm duration, not the time of concentration. When seeking a volume from the Modified Rational Method it is vital that the calculation be performed at multiple durations with corresponding intensities to produce a series of trapezoidal hydrographs. Once the allowable discharge is subtracted the hydrograph with the greatest volume is then the critical storm duration for that analysis.

The computer program Hydrographs by Intelisolve was used to check the stormwater detention basin design.  Using the NRCS method, the basin storage/outflow structure provided does not contain the 10-year 24-hour storm water volume and does not attenuate the increased storm water peak flow or volume created by the development.

*Palmer v Suncoast*

Measurements taken at the stormwater detention basin on April 21, 2015 indicate that the constructed dimensions of the basin differ from those presented in the original stormwater calculations; of particular note is the diameter of the orifice in the outlet structure, which measured 15" rather than the 12" given in the stormwater detention calculations.  There is also a significant amount of sand/silt buildup in the bottom of the basin.  These observations indicate that the original calculations are not valid for the as-built condition.

It is common for covered hopper railcars to be stored on the multi-track spur.  For example, during the April site visit there were an estimated 50 to 100 covered hopper railcars on the spur.  These railcars present an increase in impervious area when considering the runoff going to Alligator Branch.  This increase in impervious area (which could be as great as 1 acre) will result in increased peak flows and velocities of runoff entering Alligator Branch.

**Stormwater Diversion**

South of the industrial development, Bradford Lane serves as an access road crossing Pearl River County property into the site.  Historically, a drainage ditch existed between Bradford Lane and the railroad, carrying storm water in a southerly direction.  This ditch crossed beneath Bradford Lane downstream of Ravenwood Drive and flowed into Alligator Branch.  In the post-development condition, this ditch has been diverted using a double-line of culverts and now crosses  beneath the access road and enters Alligator Branch upstream of Ravenwood Drive. Measurements taken on April 21, 2016 indicate that these pipes are 36" in diameter.  The single pipe located upstream of these double pipes (beneath the original single track) measured 34".

This diversion was apparently done without consideration of the effects of the additional drainage area on the pipe culverts which carry Alligator Branch beneath Ravenwood Drive.  As part of the development design,  a hydrologic and hydraulic analysis of this diversion should have been made in order to ensure that the capacity of the existing pipe culverts and creek channel at Ravenwood Drive are able to handle the increased flow.

**Conclusions**

I offer the following remarks in summary of my site visit and review of the listed documentation regarding the hydrology and hydraulics of Alligator Branch in the study area:

*Palmer v Suncoast*

- The Flood Damage Prevention Ordinances of both the City of Picayune and Pearl River County require that, in cases of fill (such as that placed for the multi-track railroad spur) being placed in the SFHA of a Zone A or Zone AE stream, an engineering analysis be performed with respect to any impacts the fill would cause on flood heights. Although a hydraulic analysis was performed by Aqua Engineering, Ltd., a review of the analysis reveals that the entire length of the railroad spur was not included in the HEC-RAS computer modeling of Alligator Branch, and neither the buildings nor the stockpiled materials present at the industrial site were included. The 'No Rise' Certification does not reflect the as-built conditions and therefore does not meet the ordinance's requirement.

- The Flood Damage Prevention Ordinance of both the City of Picayune and Pearl River County prohibit the placement of obstructions in the floodplain without an engineering analysis showing that the obstructions will not increase flood heights. An engineering analysis of Alligator Branch reflecting the obstructions contained in the industrial development should have been performed to determine any consequential increase in flood heights.

- The Flood Damage Prevention Ordinance of the City of Picayune requires that, for developments greater than 5 acres which are located in an un-numbered Zone A, a hydraulic analysis be performed and BFEs determined for the Zone A. The development of the industrial site should have triggered this requirement, and BFEs should have been determined for Alligator Branch within the Zone A. I could not find evidence that such a study was performed (it is not included in Aqua Engineering, Ltd.'s analysis).

- The Flood Damage Prevention Ordinance of Pearl River County requires that facilities be designed to prevent the discharge of excess runoff onto adjacent properties. However, a double line of drainage culverts has been installed in the plant access road on the south end of the industrial site which divert additional runoff into Alligator Branch upstream of Ravenwood Drive.

- The storm water detention basin analysis performed for the industrial site used the Rational method for determining inflow and outflow hydrographs. The storm water detention basin appears to be undersized due to the method used, and it is passing increased storm water volumes into Alligator Branch.

- Based on the findings and conclusions listed above, I am of the opinion that the construction and existence of the plant has caused an increase in storm water volumes into Alligator Branch that did not exist prior to the plant construction and the increased frequency, intensity and duration of flood water recognized by the residents of Ravenwood is consistent with this increased storm water flow into Alligator Branch.

If you have any questions or comments regarding this analysis, please do not hesitate to contact me. Thank you.

Sincerely,

RIVER SCIENCE LLC

*Jill S. Butler*

Jill S. Butler, P.E., CFM
Principal

c:   file

[Seal: Jill Stead Butler, Licensed Professional Engineer, 11537, State of Mississippi]



ALLIGATOR BRANCH
1998 AERIAL SHOWING DRAINAGE PATTERNS
CITY OF PICAYUNE AND PEARL RIVER COUNTY UNINCORPORATED AREAS, MISSISSIPPI

PALMER, ET AL VS SUNCOAST, ET AL
CASE NO. 1.15-CV-0034-HSO-JCG
R-S EXHIBIT 1
N.T.S.

RIVER SCIENCE, LLC
P.O. BOX 32
KOSCIUSKO, MISSISSIPPI 39090
2/15/2016



ALLIGATOR BRANCH
2004 AERIAL SHOWING DRAINAGE PATTERNS
CITY OF PICAYUNE AND PEARL RIVER COUNTY UNINCORPORATED AREAS, MISSISSIPPI

PALMER, ET AL VS SUNCOAST, ET AL
CASE NO. 1.15-CV-0034-HSO-JCG

R-S EXHIBIT 2
N.T.S.



RIVER SCIENCE, LLC
P.O. BOX 32
KOSCIUSKO, MISSISSIPPI  39090

2/15/2016



ALLIGATOR BRANCH
2013 AERIAL SHOWING FLOOD ZONES AND LIMIT OF DETAILED STUDY
CITY OF PICAYUNE AND PEARL RIVER COUNTY UNINCORPORATED AREAS, MISSISSIPPI

PALMER, ET AL VS SUNCOAST, ET AL
CASE NO. 1:15-CV-0034-HSO-JCG

R-S EXHIBIT 3
N.T.S.



RIVER SCIENCE, LLC
P.O. BOX 32
KOSCIUSKO, MISSISSIPPI  39090

2/15/2016