# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

JEFFERY CHAD PALMER, et al.                                    PLAINTIFFS

v.                                         CIVIL NO. 1:15cv34-HSO-JCG

SUN COAST CONTRACTING SERVICES, INC., et al.        DEFENDANTS

## ORDER GRANTING DEFENDANTS DRYING FACILITY ASSET HOLDINGS, LLC, SHALE SUPPORT SERVICES, LLC, AND LINFIELD, HUNTER & JUNIS, INC.'S JOINT MOTION [230] TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' PROFFERED EXPERT, JAMIE SAXON, UNDER FEDERAL RULE OF EVIDENCE 702 AND *DAUBERT*

BEFORE THE COURT is the Joint Motion [230] of Defendants Drying Facility Asset Holdings, LLC, Shale Support Services, LLC, and Linfield, Hunter & Junis, Inc., to Exclude or Limit the Testimony of Plaintiffs' Proffered Expert, Jamie Saxon, under Federal Rule of Evidence 702 and *Daubert*.   This Motion is fully briefed.   Having considered the Motion, related pleadings, the record, and relevant legal authority, the Court is of the opinion that Defendants' Motion should be granted, and Jamie Saxon will be prohibited from testifying at trial.

## I.   BACKGROUND

A.   Facts and Procedural History

Plaintiffs Jeffery Chad Palmer, Brenda and Mark Rody, Donald and Jennifer Juan, David and Karen Taporco, Kimberly and Milton J. Jacobs, Jr., Mary and Nicholas Sciambra, and Anthony Pressley ("Plaintiffs") are owners of houses in the Ravenwood Subdivision ("Ravenwood") located in an "unincorporated section of Pearl River County, Mississippi ("PRC")[,] just south of the city limits of Picayune,

Mississippi." Am. Compl. [68] at 2, 6. Plaintiffs allege that at the time they purchased their houses in Ravenwood, the land comprising Ravenwood together with a larger parcel of land served as a watershed for the Alligator Branch waterway and allowed the overflow of that waterway to move "east and west away from" Ravenwood. *Id.* at 6-7.

Plaintiffs contend that beginning on February 23, 2012, their houses began "vibrating violently" when Defendants began driving pilings into the ground on a section of land contained within the watershed. *Id.* at 8-9. Plaintiffs complained to the Pearl River County Board of Supervisors (the "Board") and the contractors but the construction/vibrations continued. *Id.* Plaintiffs also questioned the Board about the dump trucks that were coming and going from the property. *Id.*

The Board allegedly did not respond to Plaintiffs' complaints or inquires until at a meeting held on March 5, 2012, when the Board announced that Defendant Alliance Consulting Group, LLC ("Alliance"), had previously been granted permission to construct a "frac sand plant" ("the Plant") on a section of land contained within the watershed that Alliance had leased from Defendant AHG Solutions, LLC. *Id.* at 6, 8. Later in 2015, "a multi-track railroad spur" was constructed at the Plant. Linfield, Hunter & Junis, Inc., Mem. Summ. J. [233] at 3.

On February 5, 2015, Plaintiffs filed a Complaint [1] in this Court against a number of Defendants, alleging they had suffered damages to their houses and

quality of life due to the construction and operation of the Plant and the associated rail spur.   Plaintiffs filed an Amended Complaint on February 4, 2016, naming as Defendants Sun Coast Contracting Services, LLC; Integrated Pro Services, LLC; Ranger Contracting, LLC; H&H Trucking, LLC; AHG Solutions, LLC; Linfield, Hunter & Junius, Inc.; Shale Support Services, LLC; Drying Facility Asset Holdings, LLC; and ELOS Environmental, LLC.[1]   Am. Compl. [68] at 2-4.

Plaintiffs allege that vibrations from pile-driving during construction caused "obvious and visible cracks in the brick veneer of their homes, cracks in the stucco, separations of the walls in comers (sic) and around doors and windows, windows that would no longer open, and cracks" in the foundations of the houses; that development of the land increased flooding in their subdivision; that the Plant produces continuous loud noises as it runs throughout the night; that the Plant emits a "nauseating foul smell;" and that dust from the Plant's operations settles over their property.   *Id.* at 9-13.   The Amended Complaint asserts claims against Defendants in four separate counts, specifically for: (1) Negligence; (2) Trespass; (3) Private Nuisance; and (4) a Declaratory Ruling.   *Id.* at 11-13.

---

[1] Plaintiffs' original Complaint also named the Federal Emergency Management Agency and the United States Army Corp of Engineers; however, these Defendants were dismissed by the Court's October 6, 2015, Order [24].   The Complaint had also identified Advanced Inc. Group as a Defendant but Advanced was omitted from the Amended Complaint.

B.     Expert Report of Jamie L. Saxon, P.E. [230-1]

Plaintiffs designated Jamie L. Saxon, P.E., as a "qualified structural engineer" to opine on the causal relationship between the construction/operation of the Plant and the damages to Plaintiffs' houses.   Saxon submitted an original Report on March 24, 2016, and a Revised Report on April 29, 2016.   Saxon Dep. [230-2] at 20.[2]   Saxon's original Report does not appear within the record here, and Saxon testified at his deposition that it was no longer relevant in light of his April 29, 2016, Revised Report.   *Id*.   Saxon's Revised Report reflected that his opinions were based upon his "understanding of structures and the interaction of the foundation to the supporting soils, the effects of vibrations on structures."   Saxon Revised Report [230-1] at 4.

Saxon based his opinion on documents he received from Plaintiffs and Plaintiffs' counsel, his April 21, 2016, "visit" to the Plant and the houses, and his review of a study done for the "New Zealand Transport Agency . . . [and] applicable extracts from German Standard DIN 4150-3:1999 and British Standard BS 7385-2:1993."   *Id*. at 1-4.   Saxon's opinion is that

> the intermittent pounding vibrations from driving pipe and sheet piles and continuous low vibrations caused by other construction activity and daily operations of the adjacent plant and rail spur augmented by more frequent and longer lasting flooding has resulted in the densification of the fill material placed below each of the houses and this has resulted in the damages noted.

---

[2] Saxon Dep. [230-2] at 20 (page 75 as paginated by the court reporter).

*Id*. at 4.

Saxon concludes that his opinion is based "upon his observations and review of supplied materials and reports." *Id.*

C.    Defendants' Joint Motion to Exclude [230]

On March 20, 2017, Defendants filed the present Joint Motion [230] to Exclude or Limit Saxon's testimony.    Defendants assert that Saxon is not qualified under Federal Rule of Evidence 702 or *Daubert* to testify regarding his opinions that Defendants' construction and operation of the Plant caused any damage to Plaintiffs' houses from either vibrations or the alleged increase in flooding, that Saxon did not employ a "sound methodology" in formulating his opinions, and that his opinions are not "founded on sufficient facts or data."    Joint Mot. [230] at 1; Mem. in Supp. [231] at 1.

Defendants argue that Saxon performed no "independent investigation and instead relied wholly on the information provided to him by the Plaintiffs."    Mem. in Supp. [231] at 7-17.    According to Defendants, when asked at his deposition if he relied upon Plaintiffs' allegations to form his opinion, Saxon admitted that he had, as follows:

> Q.    Okay. So your opinion is based on the plaintiffs' description of what they experienced during construction; the fact that there are various degrees of damage, cracks, things like that at their homes that they claim weren't there before; and then the fact that pile driving and construction actually occurred; and the correlation between those led you to the conclusion that the construction caused the damage that the plaintiffs described?

A.   Right.

Mem. in Supp. [231] at 9 (quoting Saxon Dep. [230-2] at 9).[3]

Plaintiffs' Response maintains that Saxon is qualified, that he employed a reliable methodology, and that his opinions are relevant.   Resp. in Opp'n [283] at 1; Mem. [284] at 3-4.   Plaintiffs support their Response by attaching only one Exhibit, Saxon's Resume [283-1], which they assert reflects that Saxon is qualified to offer an opinion in this case based upon his "25 years experience as an engineer" and his past structural and engineering experience which included many "unique and complex foundation systems including causes of foundation failure."   Mem. [284] at 3.   Plaintiffs further maintain that "the methodology used by Mr. Saxon is appropriate to the industry standards."   *Id.* at 3-4.

## II.   DISCUSSION

A.   Rule 702 and *Daubert*

Federal Rule of Evidence 702 provides that [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)   the testimony is based on sufficient facts or data;

(c)   the testimony is the product of reliable principles and methods; and

---

[3]   Saxon Dep. [230-2] at 9 (with the quotation taken from page 30, lines 8-18 as paginated by the court reporter).

(d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers' . . . ." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993)). "An expert witness's testimony should be excluded if the district court 'finds that the witness is not qualified to testify in a particular field or on a given subject.'" *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). "That said, 'Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.'" *Id.* (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)).

"District courts are to make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Carlson*, 822 F.3d at 199 (quoting *Pipitone*, 288 F.3d at 243-44). "In short, expert testimony is admissible only if it is both relevant and reliable." *Pipitone*, 288 F.3d at 244 (citing *Daubert*, 509 U.S. at 589). The party seeking to have the

district court admit expert testimony bears the burden of proof. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

"The relevance prong requires the proponent to demonstrate that the expert's reasoning or methodology can be properly applied to the facts in issue." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (per curiam) (quotation omitted). "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (quotation omitted).

"The reliability prong mandates that expert opinion be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief." *Johnson*, 685 F.3d at 459 (quotation omitted). "A party seeking to introduce expert testimony must show '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Carlson*, 822 F.3d at 199 (quoting *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007)).

In conducting the reliability inquiry, the following non-exclusive list of factors should be considered:

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication;

(3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community.

*Johnson*, 685 F.3d at 459 (quotation omitted); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *Daubert*, 509 U.S. at 593-94.

"The *Daubert* inquiry is flexible, but the proponent must establish reliability by showing that the testimony is based on reasoning or methodology that is 'scientifically valid.'" *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 850-51 (5th Cir. 2015) (quoting *Moore*, 151 F.3d at 276). "The *sine qua non*, however, is whether in his courtroom presentation the expert used the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Roman v. Western Mfg., Inc.*, 691 F.3d 686, 693 (5th Cir. 2012) (quotation omitted).

"Ultimately, the trial court must also find an adequate fit between the data and the opinion proffered." *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (quotation omitted). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

B.    Defendants' Joint Motion [230] to Exclude Jamie Saxon should be granted.

　　　1.    Plaintiffs have not shown Saxon is qualified.

In determining whether to strike an expert's opinions and testimony, a court first determines whether an expert is qualified to offer the opinions for which they are designated.    In the present case, Defendants contend that although Saxon is an engineer with experience in the effects of direct vibrations on an adjacent structure, by his own admission he has no expertise or experience "where the issue was indirect damage to a structure from vibrations traveled (sic) through the ground, and soil composition was a factor in the methodology in the investigation[.]"    Saxon Dep. [230-2] at 8.[4]

Plaintiffs' Response simply references Saxon's Resume and proffers that he has had 25 years of structural and engineering experience in foundation failures, but does not identify any experience or expertise specific to the issues in this case. The Court is not convinced that Saxon obtained the expertise to render a reliable opinion in this case simply from reviewing a "study done for the New Zealand Transport Agency . . . [and] applicable extracts from German Standard DIN 4150-3:1999 and British Standard BS 7385-2:1993" as referenced in his Revised Report. Saxon Revised Report [230-1] at 2.    Based upon the barebones submissions from Plaintiffs, the record, and Saxon's testimony, the Court finds that Plaintiffs have

_____

[4] Saxon Dep. [230-2] at 8 (page 28 as paginated by the court reporter).

not carried their burden of showing that Saxon is qualified to render the opinions proffered in his Revised Report.

2.  <u>Plaintiffs have not shown that Saxon employed an accepted or reliable methodology, nor has he based his opinions on sufficient facts or data.</u>

Additionally, as the proponents of Saxon's expert testimony, Plaintiffs are also required to show that his testimony is reliable, *United States v. Hicks,* 389 F.3d 514, 525 (5th Cir. 2004), and to establish the admissibility requirements "by a preponderance of the evidence," *United States v. Fullwood,* 342 F.3d 409, 412 (5th Cir. 2003).

> A party seeking to introduce expert testimony must show "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

*Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007) (quoting Fed. R. Evid. 702)).

In applying these factors to Saxon's Revised Report and Plaintiffs' limited Response to Defendants' Motion, the Court finds that Plaintiffs have simply not carried their burden to establish that Saxon is qualified to render opinions on indirect vibrations on Plaintiffs' houses or that Saxon utilized a methodology "appropriate to the industry standards" relevant to the issues in this case.

Saxon's Revised Report indicates that he reviewed other materials, including "USF Reports" that indicate damage to Plaintiffs' houses was due to long term settlement of the soil, but simply expresses his disagreement with these Reports.

Saxon did no independent testing and performed no calculations of his own. Nowhere has Saxon attempted to explain how his approach is or would constitute an accepted and reliable methodology within the relevant field of engineering. Neither Saxon's Revised Report nor Plaintiffs' Response disclose what Saxon construes to be the appropriate industry methods or standards for approaching the issues about which he opines, or how Saxon applied those standards to the facts of this case in formulating his opinions.

As for the facts and data underlying his conclusions, Saxon testified at his deposition that he formulated his opinion that the damages to Plaintiffs' houses were caused by the combination of the vibrations and increased flooding that occurred during the construction of, and the subsequent operation of, the Plant and associated railroad spur, based on the fact that Plaintiffs told him that their homes only began to suffer damages after the construction started. Saxon Dep. [230-2] at 9.[5] Other than Plaintiffs' versions of events and his review of the materials discussed earlier, Saxon conducted no independent engineering analysis of his own and performed no calculations.

Saxon's reliance on Plaintiffs' version of the events "gives rise to a common-sense skepticism" regarding Saxon's evaluation of data especially since the record indicates that he "did not seek to verify the information presented to him." *Munoz v. Orr*, 200 F.3d 291, 301-02 (5th Cir. 2000) (quotations omitted). The Court finds

_____

[5] Saxon Dep. [230-2] at 9 (page 30, as paginated by the court reporter).

that Saxon's opinions are not based upon sufficient facts and data, and there is too great an analytical gap between the data and his conclusions to support a finding that Saxon applied the facts reliably to this case. It is clear that Saxon did not employ the same level of intellectual rigor to his proffered courtroom testimony as is expected of experts in the relevant field. To permit him to testify would allow the jury to conclude that his opinions are correct simply because he says so. This constitutes impermissible *ipse dixit* testimony.

Based upon Saxon's Revised Report, deposition testimony, and Plaintiffs' Response to Defendants' Motion, Plaintiffs have not shown that Saxon's opinions are reliable or would be of assistance to the trier of fact. The Court can only conclude that Saxon should not be permitted to testify at trial.

## III.  CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. After review of Defendants' Joint Motion [230], Plaintiffs' Response, the record, and relevant legal authority, the Court finds that Defendants' Joint Motion should be granted and that Jamie Saxon will not be permitted to testify at trial.

**IT IS**, **THEREFORE**, **ORDERED AND ADJUDGED** that Defendants Drying Facility Asset Holdings, LLC, Shale Support Services, LLC, and Linfield, Hunter & Junis, Inc.'s Joint Motion [230] to Exclude or Limit the Testimony of

Plaintiffs' Proffered Expert, Jamie Saxon, under Federal Rule of Evidence 702 and *Daubert* is **GRANTED,** and Jamie Saxon will not be permitted to testify at trial.

**SO ORDERED AND ADJUDGED**, this the 7th day of July, 2017.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE