IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JEFFERY CHAD PALMER, et al.**                                              **PLAINTIFFS**

v.                                                                  CIVIL NO. 1:15cv34-HSO-JCG

**SUN COAST CONTRACTING SERVICES, INC., et al.**          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTIONS TO STRIKE THE OPINIONS OF EXPERT WITNESSES JIM MARTIN [242], ANDY JOHNSON [244], CHRIS ROBERTSON, AND ANGIE HENDRIX [248]

BEFORE THE COURT are Plaintiffs' Motions to Strike the Opinions of Defendants' Expert Witnesses Jim Martin [242], Andy Johnson [244], Chris Robertson, and Angie Hendrix [248]. These Motions are fully briefed. Having considered the Motions, related pleadings, the record, and relevant legal authority, the Court is of the opinion that Plaintiffs' Motions [242] [244] [248] should be denied.

I.  BACKGROUND

A.  Facts and Procedural History

Plaintiffs Jeffery Chad Palmer, Brenda and Mark Rody, Donald and Jennifer Juan, David and Karen Taporco, Kimberly and Milton J. Jacobs, Jr., Mary and Nicholas Sciambra, and Anthony Pressley ("Plaintiffs") are owners of houses in the Ravenwood Subdivision ("Ravenwood") located in an "unincorporated section of Pearl River County, Mississippi ("PRC")[,] just south of the city limits of Picayune, Mississippi." Am. Compl. [68] at 2, 6. Plaintiffs allege that at the time they

purchased their houses in Ravenwood, the land comprising Ravenwood together with a larger parcel of land served as a watershed for the Alligator Branch waterway and allowed the overflow of that waterway to move "east and west away from" Ravenwood. *Id*. at 6-7.

Plaintiffs contend that beginning on February 23, 2012, their houses began "vibrating violently" when Defendants began driving pilings into the ground on a section of land contained within the watershed. *Id*. at 8-9. Plaintiffs complained to the Pearl River County Board of Supervisors (the "Board") and the contractors but the construction or vibrations continued. *Id*. Plaintiffs also questioned the Board about the dump trucks that were coming and going from the property. *Id*.

The Board allegedly did not respond to Plaintiffs' complaints or inquiries until at a meeting held on March 5, 2012, when the Board announced that Defendant Alliance Consulting Group, LLC ("Alliance"), had previously been granted permission to construct a "frac sand plant" ("the Plant") on a section of land contained within the watershed that Alliance had leased from Defendant AHG Solutions, LLC. *Id*. at 6, 8. Later in 2015, "a multi-track railroad spur" was constructed at the Plant. Linfield, Hunter & Junis, Inc., Mem. Summ. J. [233] at 3.

On February 5, 2015, Plaintiffs filed a Complaint [1] in this Court against a number of Defendants, alleging they had suffered damages to their houses and quality of life due to the construction and operation of the Plant and the associated

2

rail spur. Plaintiffs filed an Amended Complaint on February 4, 2016, naming as Defendants Sun Coast Contracting Services, LLC; Integrated Pro Services, LLC; Ranger Contracting, LLC; H&H Trucking, LLC; AHG Solutions, LLC; Linfield, Hunter & Junius, Inc.; Shale Support Services, LLC; Drying Facility Asset Holdings, LLC; and ELOS Environmental, LLC.[1] Am. Compl. [68] at 2-4.

Plaintiffs allege that vibrations from pile-driving during construction caused "obvious and visible cracks in the brick veneer of their homes, cracks in the stucco, separations of the walls in comers (sic) and around doors and windows, windows that would no longer open, and cracks" in the foundations of the houses; that development of the land increased flooding in their subdivision; that the Plant produces continuous loud noises as it runs throughout the night; that the Plant emits a "nauseating foul smell;" and that dust from the Plant's operations settles over their property. *Id*. at 9-13. The Amended Complaint asserts claims against Defendants in four separate counts, specifically for: (1) Negligence; (2) Trespass; (3) Private Nuisance; and (4) a Declaratory Ruling. *Id*. at 11-13.

B.  <u>Plaintiffs' Motion to Strike [242] Defendant Linfield Hunter & Junis, Inc.'s Expert Jim Martin, Ph.D., P.E.</u>

On March 21, 2017, Plaintiffs filed a Motion to Strike [242] Defendant Linfield Hunter & Junis, Inc.'s ("LH&J") expert Jim Martin, Ph.D., P.E. ("Martin").

---

[1] Plaintiffs' original Complaint also named the Federal Emergency Management Agency and the United States Army Corp of Engineers; however, these Defendants were dismissed by the Court's October 6, 2015, Order [24]. The Complaint had also identified Advanced Inc. Group as a Defendant but Advanced was omitted from the Amended Complaint.

LH&J designated Martin as an expert in the field of hydrology to testify that "LH&J's designed drainage and detention system are adequately sized to reduce post-development peak runoff to a level that is less than the pre-development peak runoff for a 10 year design storm." Martin Report [258-1] at 4. Plaintiffs assert that Martin is not qualified under Federal Rule of Evidence 702 or *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), to offer his opinions about Defendant LH&J's design of the retention pond at the Plant because he did "no research on whether or not the retention pond was built as designed or functions as designed." Mot. Exclude Martin [242] at 1; Mem. Exclude Martin [243] at 2.

LH&J responds that Martin is "well qualified in the field of hydrology," that he holds "a Bachelor of Science degree in Civil Engineering from the University of Alabama and a Master of Science in Environmental Engineering," and that he obtained a Coastal Engineering Certificate from Old Dominion University. Mem. in Opp'n [290] at 1-2. LH&J attaches as Exhibit "A" to its Response a copy of Martin's Curriculum Vitae [290-1] at 1-2. LH&J asserts that Plaintiffs have proffered no basis for striking the opinions Martin has offered, and that their only argument is that Martin's opinions should be stricken because he did not proffer further opinions on whether the retention pond was built as designed or functions as designed. Mem. in Opp'n [290] at 1-2.

4

C. <u>Plaintiffs' Motion to Strike [244] Defendants Drying Facility Asset Holdings, LLC, and Shale Support Service's Expert Andy K. Johnson</u>

Plaintiffs also challenge Defendants Drying Facility Asset Holdings, LLC ("Drying Facility") and Shale Support Services, LLC's ("Shale") expert Andy K. Johnson ("Johnson"). Johnson was designated as an expert in the area of appraising residential real estate to offer opinions on the estimated value of Plaintiffs' houses as of May 13, 2016. Plaintiffs allege that Johnson is not qualified to testify regarding his opinions on the 2016 value of Plaintiffs' houses because Mississippi law requires that an appraisal opinion of damaged but not destroyed property must be "the diminution in value of the Plaintiffs' property as a function of its before and after value." Mot. Exclude Johnson [244] at 1; Mem. Exclude Johnson [245] at 2. In this case, Johnson purports to opine only on the May 2016 value of Plaintiffs' houses, not a value before and after the construction and operation of the Plant and rail spur.

Defendants Drying Facility and LH&J[2] maintain that Johnson is a highly qualified appraiser who produces approximately 150 residential real estate appraisal reports a year. Resp. in Opp'n [265] at 1; Mem. in Opp'n [266] at 1-4. Johnson's Resume, Exhibit "B" [265-2] at 1, reflects that from 1998-2007 he was a Mississippi State Certified Licensed Appraiser, and that since 2007 he has been a Mississippi State Licensed Certified Residential Appraiser. Defendants contend

---

[2] LH&J has filed a Joinder [285] in Defendants Drying Facility and Shale's Response [244].

that in forming his opinions, Johnson utilized the "sales comparison approach to value," and that "[t]he methodology that Mr. Johnson employed to arrive at his 2016 opinions of fair market value of each of the Plaintiffs' homes is the same methodology he uses in his appraisal practice."  Resp. in Opp'n [265] at 1; Mem. in Opp'n [266] at 1-4.

D. <u>Plaintiffs' Motion to Strike [244] Defendants Drying Facility, LH&J, and Shale's Experts Chris Robertson, MSPH, CIH, CSP ("Robertson"), and Angie Hendrix, MSPH ("Hendrix")</u>

Plaintiffs have also moved to strike Defendants Drying Facility, LH&J, and Shale's "monitoring" experts Chris Robertson ("Robertson") and Angie Hendrix ("Hendrix") of Technical Environmental Services, Inc., on grounds that neither are qualified to testify regarding their opinions as to the "ambient levels of noise, volatile organic compounds ("VOC"), and dust" found in Ravenwood because "they only provide an opinion for one twenty[-]four hour period since the nuisance started in 2012."  Mot. Exclude Robertson and Hendrix [248] at 1; Mem. Exclude Robertson and Hendrix [249] at 2.  Plaintiffs also maintain that their opinions are not "reliable" because Hendrix, who allegedly has minimal expertise in noise and dust, reviewed the data collected by a technician and wrote the entire expert report, while Robertson, who does have expertise in dust and noise, simply reviewed the report.  Mem. Exclude Robertson and Hendrix [249] at 4-9.

Defendants Drying Facility and Shale respond that Plaintiffs did not challenge either Hendrix or Robertson's "education or training, their 'data

6

gathering' or their methodology." Mem in Opp'n [270] at 2. Defendants point out that Hendrix has been an environmental consultant for twelve years and holds a "Bachelor's of Science in biology and a Master of Science in public health with a focus in environmental toxicology and risk assessment." *Id*. at 3. Robertson holds a "Master of Science of public health and is a certified industrial hygienist." *Id*. Defendants contend that it is clear from both Hendrix and Robertson's deposition testimony that "the design of the sampling plan, the analysis of the results, and the drafting, reviewing, and finalizing of the report was a collaborative effort." *Id*. at 2, 9.

## II.   DISCUSSION

A.   Rule 702 and *Daubert*

Federal Rule of Evidence 702 provides that [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)   the testimony is based on sufficient facts or data;
> (c)   the testimony is the product of reliable principles and methods; and
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers' . . . ." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002) (citing *Daubert,* 509

7

U.S. at 592-93). "An expert witness's testimony should be excluded if the district court 'finds that the witness is not qualified to testify in a particular field or on a given subject.'" *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). "That said, 'Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.'" *Id.* (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)).

"District courts are to make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Carlson*, 822 F.3d at 199 (quoting *Pipitone*, 288 F.3d at 243-44). "In short, expert testimony is admissible only if it is both relevant and reliable." *Pipitone*, 288 F.3d at 244 (citing *Daubert*, 509 U.S. at 589). The party seeking to have the district court admit expert testimony bears the burden of proof. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

"The relevance prong requires the proponent to demonstrate that the expert's reasoning or methodology can be properly applied to the facts in issue." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (per curiam) (quotation omitted). "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed

8

opinion would assist the trier of fact to understand or determine a fact in issue." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (quotation omitted).

"The reliability prong mandates that expert opinion be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief." *Johnson*, 685 F.3d at 459 (quotation omitted). "A party seeking to introduce expert testimony must show '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Carlson*, 822 F.3d at 199 (quoting *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007)).

In conducting the reliability inquiry, the following non-exclusive list of factors should be considered:

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community.

*Johnson*, 685 F.3d at 459 (quotation omitted); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *Daubert*, 509 U.S. at 593-94.

"The *Daubert* inquiry is flexible, but the proponent must establish reliability by showing that the testimony is based on reasoning or methodology that is 'scientifically valid.'" *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 850-51

(5th Cir. 2015) (quoting *Moore*, 151 F.3d at 276). "The *sine qua non*, however, is whether in his courtroom presentation the expert used the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Roman v. Western Mfg., Inc.*, 691 F.3d 686, 693 (5th Cir. 2012) (quotation omitted).

"Ultimately, the trial court must also find an adequate fit between the data and the opinion proffered." *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (quotation omitted). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

B.  Plaintiffs' Motions to Strike [242] [244] [248] should be denied.

 1.  Martin, Johnson, Robertson, and Hendrix are sufficiently qualified to testify.

In determining whether to strike an expert's opinions and testimony, a court first determines whether an expert is qualified to offer the opinions for which they are designated. *Carlson*, 822 F.3d at 199. "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.* (quoting *Huss*, 571 F.3d at 452).

10

Plaintiffs make blanket assertions in each of their Motions to Strike [242] [244] [248] that these experts are not qualified to testify, but do not articulate a factual or legal basis underlying their contentions. Having reviewing each experts' qualifications, the opinions they have offered, the parties' arguments, and the record as a whole, the Court finds that Defendants have met their burden of establishing that Martin, Johnson, Robertson, and Hendrix are sufficiently qualified through education, training, and experience to testify to the opinions contained in their expert reports.

    2.    <u>Plaintiffs' Motion to Strike Martin [242] should be denied because his opinions are relevant.</u>

Plaintiffs allege that Martin's opinions should be stricken because he opines only that the design of the retention pond was proper, and not whether the "as-built" retention pond was constructed in compliance with the design, or whether the retention pond actually functions as designed. Mem. Exclude Martin [242] at 1-7. According to Plaintiffs, "Martin's expert designation does not demonstrate he is qualified to render an opinion on anything other than the opinions he intends to give on the issues pertaining to LHJ's 'design' of the retention pond." *Id*. at 2. In essence, it appears that Plaintiffs are in fact arguing that Martin's testimony is not relevant because it addresses only the design of the retention pond, even though the design of the Plant is at issue in this case.

11

The Court finds that Plaintiffs have not alleged that Martin's methodology in reaching his opinions as to the design of the retention pond, or his opinions themselves, are unreliable. Plaintiffs' allegations go more to the relevance of Martin's theories on grounds that they claim the retention pond was not built and does not function as designed. However, this criticism goes more to the weight of Martin's opinions, not their relevance. *See Roman*, 691 F.3d at 694. The design of the Plant is at issue, thus Martin's opinions are relevant. *See Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 776 (5th Cir. 2017). Martin should be allowed to testify at trial.

> 3. <u>Plaintiffs' Motion to Strike Johnson [244] should be denied because his opinions are reliable and relevant, and Defendants have shown that Johnson employed an accepted and reliable methodology.</u>

As the proponents of Johnson's expert testimony, Defendants are required to show that his testimony is reliable, *United States v. Hicks,* 389 F.3d 514, 525 (5th Cir. 2004), and to establish the admissibility requirements "by a preponderance of the evidence," *United States v. Fullwood,* 342 F.3d 409, 412 (5th Cir. 2003).

> A party seeking to introduce expert testimony must show "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

*Huss*, 571 F.3d at 452 (quoting *Smith,* 495 F.3d at 227 (quoting Fed. R. Evid. 702)).

In applying these factors to Johnson's appraisals of Plaintiffs' houses, the Court finds that Defendants have carried their burden of demonstrating that Johnson is qualified to render opinions on the appraised values of the houses.

Plaintiffs' contention that Johnson's appraisal opinions must be stricken because he only appraised their houses for their as-is May 2016 value and did not perform a "diminution in value" analysis, is unavailing.[3] While Mississippi law supplies the substantive framework for analysis in the present case, "the Federal Rules of Evidence control the admissibility of expert testimony." *Roman*, 691 F.3d at 692.

The Court finds that Johnson's opinions as to the May 2016 value of Plaintiffs' houses are relevant. Based upon a review of Johnson's opinions and methodology, the Court is of the view that Johnson is qualified and has utilized accepted and reliable methods based upon sufficient facts and data. To the extent Plaintiffs have issues with Johnson's appraisal methodology as it pertains to Plaintiffs' theory of liability under Mississippi law, the Court finds that this issue goes more to the weight of Johnson's opinions or appraisals, a question which Plaintiffs' counsel can address on cross-examination. *See Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful

---

[3] Of course, Defendants maintain that Plaintiffs' houses suffered no "diminution in value" as evidenced by Johnson's appraisals.

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

The Court is of the opinion that the jury can hear Johnson's testimony and then decide whether to "accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which [Johnson] relied are accurate." *Pipitone*, 288 F.3d at 250. Johnson should be allowed to testify at trial.

> 4. <u>Plaintiffs' Motion to Strike Robertson and Hendrix [248] should be denied because their opinions are reliable and relevant, and Defendants have shown that they employed an accepted and reliable methodology.</u>

As the proponents of Robertson and Hendrix's expert testimony, Defendants have demonstrated that their expert report is based upon sufficient facts and data, that their methodology is accepted and reliable, and that their expert opinions are relevant.

Plaintiffs' position that Robertson and Hendrix's expert report is based upon insufficient data collected during a single twenty-four hour sampling of the Plant's emissions of dust, noise, and volatile organic compounds goes to the weight of their opinions. Robertson and Hendrix employed a reliable methodology by collecting data during this twenty-four hour period, sending the data to independent laboratories for analysis, and then utilizing the laboratory analysis to compile their expert report. Plaintiffs' counsel can address the adequacy of the data collected

14

during the twenty-four hour test sampling period, or whether this was a sufficiently lengthy period of time, through cross-examination at trial.

To the extent Plaintiffs argue that the Report is unreliable because Hendrix wrote the Report even though she has little expertise on noise and dust, their deposition testimony reflects that Robertson and Hendrix discussed the data prior to Hendrix drafting the report, that Robertson answered Hendrix's questions, and that Robertson edited the Report after it was drafted.[4] The Court concludes that the Report was a sufficiently collaborative effort by these two experts to satisfy the requirements of Rule 702 and *Daubert*. Robertson and Hendrix should be allowed to testify at trial.

### III. CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. After review of Plaintiffs' Motions to Strike the Opinions of Expert Witnesses Jim Martin [242], Andy Johnson [244], Chris Robertson and Angie Hendrix [248], Defendants' Responses, the record, and relevant legal authority, the Court finds that Plaintiffs' Motions should be denied, and Jim Martin, Andy Johnson, Chris Robertson, and Angie Hendrix should be permitted to testify at trial.

---

[4] *See* Hendrix Depo. [248-2] at 20-21 (pages 77-78 as paginated by the court reporter); Robertson Depo. [248-3] at 9 (pages 32-33 as paginated by the court reporter).

15

**IT IS**, **THEREFORE**, **ORDERED AND ADJUDGED** that Plaintiffs' Motions to Strike the Opinions of Expert Witnesses Jim Martin [242], Andy Johnson [244], Chris Robertson, and Angie Hendrix [248] are **DENIED**, and Jim Martin, Andy Johnson, Chris Robertson, and Angie Hendrix will be permitted to testify at trial.

**SO ORDERED AND ADJUDGED**, this the 19th day of July, 2017.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE