IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JEFFERY CHAD PALMER, et al.**                                    **PLAINTIFFS**

v.                                                    CIVIL NO. 1:15cv34-HSO-JCG

**SUN COAST CONTRACTING SERVICES, INC., et al.**       **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT SHALE SUPPORT SERVICES,
LLC'S MOTION [236] FOR SUMMARY JUDGMENT**</u>

BEFORE THE COURT is Defendant Shale Support Services, LLC's Motion [236] for Summary Judgment. This Motion is fully briefed. Having considered the Motion, Plaintiffs' Response, related pleadings, the record, and relevant legal authority, and because Plaintiffs have not carried their summary judgment burden, the Court is of the opinion that Defendant Shale Support Services, LLC's Motion [236] should be granted. Plaintiffs' claims against Shale Support Services, LLC, should be dismissed.

I.   <u>BACKGROUND</u>

A.   <u>Facts and Procedural History</u>

Plaintiffs Jeffery Chad Palmer, Brenda and Mark Rody, Donald and Jennifer Juan, David and Karen Taporco, Kimberly and Milton J. Jacobs, Jr., Mary and Nicholas Sciambra, and Anthony Pressley ("Plaintiffs") are owners of houses in the Ravenwood Subdivision ("Ravenwood") located in an "unincorporated section of Pearl River County, Mississippi ("PRC")[,] just south of the city limits of Picayune, Mississippi." Am. Compl. [68] at 2, 6. Plaintiffs allege that at the time they

purchased their houses in Ravenwood, the land comprising Ravenwood together with a larger parcel of land served as a watershed for the Alligator Branch waterway and allowed the overflow of that waterway to move "east and west away from" Ravenwood. *Id*. at 6-7.

Plaintiffs contend that beginning on February 23, 2012, their houses began "vibrating violently" when Defendants began driving pilings into the ground on a section of land contained within the watershed. *Id*. at 8-9. Plaintiffs complained to the Pearl River County Board of Supervisors (the "Board") and the contractors but the construction/vibrations continued. *Id*. Plaintiffs also questioned the Board about the dump trucks that were coming and going from the property. *Id*.

The Board allegedly did not respond to Plaintiffs' complaints or inquiries until at a meeting held on March 5, 2012, when the Board announced that Defendant Alliance Consulting Group, LLC ("Alliance"), had previously been granted permission to construct a "frac sand plant" ("the Plant") on a section of land contained within the watershed that Alliance had leased from Defendant AHG Solutions, LLC. *Id*. at 6, 8. Later in 2015, "a multi-track railroad spur" was constructed at the Plant. Linfield, Hunter & Junius, Inc., Mem. Summ. J. [233] at 3.

On February 5, 2015, Plaintiffs filed a Complaint [1] in this Court against a number of Defendants, alleging they had suffered damages to their houses and quality of life due to the construction and operation of the Plant and the associated

2

rail spur. Plaintiffs filed an Amended Complaint on February 4, 2016, naming as Defendants Sun Coast Contracting Services, LLC; Integrated Pro Services, LLC; Ranger Contracting, LLC; H&H Trucking, LLC; AHG Solutions, LLC; Linfield, Hunter & Junius, Inc.; Shale Support Services, LLC; Drying Facility Asset Holdings, LLC; and ELOS Environmental, LLC.[1] Am. Compl. [68] at 2-4.

Plaintiffs allege that vibrations from pile-driving during construction caused "obvious and visible cracks in the brick veneer of their homes, cracks in the stucco, separations of the walls in comers (sic) and around doors and windows, windows that would no longer open, and cracks" in the foundations of the houses; that development of the land increased flooding in their subdivision; that the Plant produces continuous loud noises as it runs throughout the night; that the Plant emits a "nauseating foul smell;" and that dust from the Plant's operations settles over their property. *Id.* at 9-13. The Amended Complaint asserts claims against Defendants in four separate counts, specifically for: (1) Negligence; (2) Trespass; (3) Private Nuisance; and (4) a Declaratory Ruling. *Id.* at 11-13.

B.   The Plant

Defendant Alliance constructed the Plant in 2012. Drying Facility Asset Holdings, LLC, Mem. in Opp'n [235] at 1-7. It is undisputed that in January 2013,

---

[1] Plaintiffs' original Complaint also named the Federal Emergency Management Agency and the United States Army Corp of Engineers; however, these Defendants were dismissed by the Court's October 6, 2015, Order [24]. The Complaint had also identified Advanced Inc. Group as a Defendant but Advanced was omitted from the Amended Complaint.

Alliance contracted with Defendant Shale Support Services, LLC ("Shale") to operate the Plant. Decl. Kevin Bowen, Ex. "A" [236-1] at 2. On October 3, 2013, Alliance was forced into bankruptcy and the Plant became an asset of the bankruptcy estate. *Id.* The Plant was shut down from October 2013 until December 2013, when the Chapter 11 Bankruptcy Trustee retained Shale to operate it. *Id.* at 3.

On August 22, 2014, the Bankruptcy Court entered its Order confirming Alliance's Second Amended Chapter 11 Plan and authorizing the sale of Alliance's assets, including the Plant, free and clear of all liabilities to Defendant Drying Facility Asset Holdings, LLC ("Drying Facility"). *Id.* at 5-6; Bankruptcy Order, Ex. "S" [234-19] at 82, 104 (confirming plan). Drying Facility closed on its purchase of Alliance's assets, including the Plant on October 6, 2014, and the Bankruptcy Court entered its "Notice of Effective Date of the Second Amended Plan of Reorganization," finding that the "Effective Date of the Plan is October 6, 2014." Drying Facility Mem. in Opp'n [235] at 6; Bankruptcy Order, Ex. "U" [234-21] at 1.

C.   Shale's Motion for Summary Judgment [236]

On March 20, 2017, Shale filed a Motion for Summary Judgment [236]. Shale contends that it never "owned, designed or constructed any part of the Plant or rail spur" and only operated the Plant between January 2013 and October 6, 2014, with the exception of the time period between October and December 2013 during which the Plant was not operating. Mem. in Opp'n [237] at 1-2; Dec. Kevin

4

Bowen, Ex. "A" [236-1] at 1-3.  Shale asserts that it is entitled to summary judgment on all of Plaintiffs' claims because: (1) as a matter of law Shale cannot be liable for Plaintiffs' claims for "damages relating to the rail spur, or ownership design, or construction of the Plant," Mem. in Opp'n [237] at 1-3; and (2) Plaintiffs' claims for nuisance should be dismissed with prejudice because Plaintiffs have failed to prove that their alleged nuisance claims for noise, odor, and dust are the result of Shale's operation of the plant, *id*. at 2-7.

In response, Plaintiffs concede that they do not have a claim for negligence against Shale, only a claim for nuisance.  Plaintiffs "reserve and incorporate a trespass claim for odor, noise, and dust into a private nuisance claim" and contend that there is a genuine issue of fact as to the source of the odor, noise, and dust. Resp. in Opp'n [279] at 1; Mem. in Opp'n [280] at 3-6.  Plaintiffs maintain that they have "steadily filed complaints with local officials and MDEQ since 2012 related to odors, noise, and dust."  Mem. in Opp'n [280] at 3.

In support of their Response to Shale's Motion for Summary Judgment, Plaintiffs proffer only the January 27, 2017, Affidavit of Steven R. Bailey, P.E. ("Bailey") [279-1] and items attached to Bailey's Affidavit, to support their claims as against Shale.  Bailey's Affidavit was apparently prepared as a part of a separate MDEQ proceeding and not specifically for the purpose of this litigation.  The Affidavit reflects that Bailey is the "Manager of the Agriculture & the Construction and Building Materials Branches of the Environmental Compliance and

5

Enforcement Division of the Office of Pollution Control at the Mississippi Department of Environmental Control (MDEQ)." Aff. Bailey, Ex. "1" [279-1] at 2. Plaintiffs contend that an MDEQ agent detected a "slight mud odor up close to the detention pond" during an inspection on July 29, 2014, as evidenced by an attachment to Bailey's Affidavit, *id.* at 82, which proves that the odors are emanating from water-covered sand pits which contain "organic matter and organisms." Mem. in Opp'n [279] at 4-5. Plaintiffs further argue that the MDEQ received numerous complaints which were attached to Bailey's Affidavit about dust from the Plant. Aff. Bailey, Ex. "1" [279-1] at 56-60.

## II. DISCUSSION

### A. Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Cox v. Wal-Mart Stores E., L.P.*, 755 F.3d 231, 233 (5th Cir. 2014); *see* Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, a court "view[s] the evidence and draw[s] reasonable inferences in the light most favorable to the nonmoving party." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (quoting *Cox*, 755 F.3d at 233); *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). Before it can determine that there is no genuine issue for trial, a court must be satisfied that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (the nonmovant must set forth specific facts to contradict the specific facts set forth by the movant, general averments are not sufficient).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).   "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Royal v. CCC&R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted).   An actual controversy exists "when both parties have submitted evidence of contradictory facts."  *Salazar-Limon v. Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quotation omitted).

B.   Shale's Motion for Summary Judgment [236] should be granted.

Plaintiffs admit that the only claim they are advancing against Shale is a private nuisance claim for odor, noise, and dust generated by the Plant.  Mem. in Opp'n [280] at 3.   The Mississippi Supreme Court has held that

> [o]ne is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either

7

>   (a)   intentional and unreasonable, or
>
>   (b)   unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

*T.K. Stanley, Inc. v. Cason*, 614 So. 2d 942, 953 (Miss. 1992) (internal citation omitted); *see King v. Coles Poultry, LLC*, Civil No. 1:14cv88, 2017 2017 WL 532284, at *3 (N.D. Miss. February 9, 2017).   "A claim for private nuisance does not require proof of an actual physical invasion.   However, the plaintiff must present evidence of an invasion in order to withstand summary judgment."   *Williams v. King*, 860 So. 2d 847, 851 (Miss. Ct. App. 2003) (citing *Cooper Tire and Rubber Co. v. Johnston,* 106 So. 2d 889, 891 (1958)).

Shale's Motion posits that it is entitled to summary judgment on Plaintiffs' private nuisance claims because Plaintiffs have produced no evidence that Shale's operation of the Plant from January 2013 to October 2013, or from December 2013 to October 6, 2014, either intentionally or negligently created any odors, noises, or dust that invaded Plaintiffs' property.   Shale further argues that even if Plaintiffs can show through their own testimony that there was an invasion of odor, noise, or dust, Plaintiffs have not brought forth any competent summary judgment evidence showing that the odor, noise, or dust was caused by Shale's operation of the Plant, and not by other adjacent properties which include "an industrial park, a highway, and Norfolk Southern Rail line."   Mem. in Supp. [237] at 6.   As to the dust, Shale

8

contends that Plaintiffs have produced no evidence to establish that more dust accumulates on their properties than any other property in South Mississippi. *Id*. The Court finds that Shale has presented sufficient competent summary judgment evidence to carry its initial summary judgment burden.

Plaintiffs counter Shale's evidence by alleging that the unwashed and untreated sand contains organic matter and organisms, whether it is "rotten water, algae, fish eggs, or other organisms . . . ." Mem. in Opp'n [280] at 5. According to Plaintiffs' brief, Shale dries the sand at extremely high temperatures causing the organisms to "cook" and emit odors. *Id*. However, Plaintiffs offer no evidence or legal authority to support this proposition.

The only evidence Plaintiffs offer is Bailey's Affidavit which is not sufficient by itself to support Plaintiffs' private nuisance claims. A plain reading of Bailey's Affidavit reveals that during the time Shale operated the plant between January 2013 and October 6, 2014, MDEQ investigated the Plant but never detected any odors or other nuisances. Specifically, Bailey's Affidavit, as it pertains to the relevant time periods involving Shale, reflects the following: (1) on October 11, 2013, Bailey inspected the Plant in response to an October 8, 2013, complaint that "rail spurs were being installed" and found that the Plant was padlocked and there was no evidence of "current or recent construction activities," Aff. Bailey, Ex. "1" [279-1] at 5-6; (2) on July 29, 2014, the MDEQ's southern regional office conducted a complaint investigation regarding odor, but "MDEQ did not notice any odor,

9

nuisance, or other problem," *id*. at 6; (3) on September 24, 2014, Bailey and his colleague, Austin Byrd, inspected the Plant and spent 45 minutes in Ravenwood but detected no odors in Ravenwood or the surrounding area, and they also noted that emissions from "the wet scrubber" were limited to steam and not odors or other nuisances, *id*. at 6-8; and (4) although MDEQ received approximately 95 complaints from Ravenwood residents beginning in February 2012, MDEQ visited the Plant approximately 21 times but was never able to confirm any odor associated with the Plant, *id*. at 8. While there is a reference to a violation by Shale as it pertained to the migration of some silt onto nearby wetlands, this is insufficient to support Plaintiffs' claims against Shale which are for nuisance occasioned by noise, odor, and dust from operation of the Plant.

    Clearly Bailey did not credit the mention of the slight odor of mud close to the detention pond by Kim Lawrence, an employee of MDEQ, in her July 29, 2014, inspection memorandum, because Bailey's Affidavit clearly states that "MDEQ did not notice any odor, nuisance, or other problem," at the inspection. Aff. Bailey, Ex. "1" [279-1] at 6. Indeed, Lawrence's observation was that this mud odor was noticeable only close to the pond; she did not find that it was noticeable from Ravenwood. Even if true, this evidence of a slight mud odor is not sufficient summary judgment evidence to support Plaintiffs' nuisance claim against Shale as to odors. Likewise, Plaintiffs' reliance on letters complaining of dust occurring in May 2012 does not support nuisance claims against Shale for dust because there is

10

no evidence that Shale had any involvement in operating the Plant until January 2013, over seven months later. Aff. Bailey, Ex. "1" [279-1] at 56-59.

Plaintiffs also cite to an attachment to Bailey's Affidavit, [279-1] at 90, wherein MDEQ noted that it had received a complaint via e-mail from Plaintiff Brenda Rody ("Rody") on September 16, 2014, claiming that she had gone outside but had to return indoors because of noise and odor. Even assuming Bailey and Byrd's September 24, 2014, inspection of the Plant was prompted in part by Rody's complaint, Bailey's Affidavit reflects that after inspecting the Plant and spending 45 minutes in Ravenwood, Bailey and Byrd detected no odors in Ravenwood or the surrounding area, and noted that emissions from "the wet scrubber" were limited to steam and not odors or other nuisances. Aff. Bailey, Ex. "1" [279-1] at 6-8. The Court finds that Rody's complaint simply amounts to a bare allegation of noise and odor which does not rise to the level of competent summary judgment evidence sufficient to create a fact question that Shale's conduct caused any damage to Plaintiffs.

To rebut Shale's summary judgment evidence, Plaintiffs were required to respond with "significant probative evidence" that a genuine issue of fact exists for trial. *Hamilton*, 232 F.3d at 477. Plaintiffs' Response does not do this. As this Court has previously held, "[a]s a threshold matter, 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Previto v. Ryobi N. Am., Inc.*, Civil No.

11

1:08cv177, 2011 WL 135673, at *10 (S.D. Miss. Jan. 14, 2011) (quoting *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)); *see also Buehler v City of Austin/Austin Police Dep't*, 824 F.3d 548, 555 (5th Cir. 2016) (it is not the court's function to "scour the record" in search of evidence to defeat a motion for summary judgment, the nonmoving party must identify the evidence relied upon with reasonable particularity).

Based upon a review of Shale's Motion, Plaintiffs' Response, the competent summary judgment evidence, and relevant legal authority, Plaintiffs have failed to bring forth sufficient summary judgment evidence to create a genuine dispute of material fact on whether Shale is liable for Plaintiffs' private nuisance claims. Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have produced insufficient evidence tending to show that Shale acted intentionally or negligently in creating odors, noise, or dust rising to the level of a nuisance, thus Plaintiffs' nuisance claims against Shale should be dismissed.

### III. CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. After review of Shale's Motion, Plaintiffs' Response, the competent summary judgment evidence, and relevant legal authority, the Court finds that Defendant Shale Support Services, LLC's Motion [236] for Motion for Summary Judgment should be granted.

**IT IS**, **THEREFORE**, **ORDERED AND ADJUDGED** that Defendant Shale Support Services, LLC's Motion [236] for Motion for Summary Judgment is **GRANTED**, and Plaintiffs' claims against Defendant Shale Support Services, LLC, are dismissed with prejudice.

**SO ORDERED AND ADJUDGED** this the 20th day of July, 2017.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE